THE LAW OFFICES OF

# FAUSTO E. ZAPATA, JR., P.C.

Broadway Chambers Building
277 Broadway, Suite 206
New York, New York 10007

Tel: 212-766-9870 / Fax: 212-766-9869
Email: fz@fzapatalaw.com
Web: www.LaborEmploymentLawFirm.com

June 16, 2021

**VIA ECF**

Hon. Katherine H. Parker
Magistrate Judge
Deniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 17D
New York, New York 10007-1312

> Re:    Abel Vera et al. v. HK Kitchen Corp., SDNY Case
>         No. 20 Civ. 8204

Dear Judge Parker,

We represent the Plaintiffs in the above referenced matter.

This letter is submitted jointly with attorneys for Defendant HK Kitchen Corp. (hereinafter "Defendants") to obtain approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act.  Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below.  See, Exhibit "A" for a copy of the proposed agreement.

This action was commenced under the Fair Labor Standards Act ("FLSA"), and New York Labor Law ("NYLL"). The Plaintiff alleges that the Defendants violated the wage and hour laws and that the Defendants owes the Plaintiff unpaid wages, liquidated damages, and penalties. Defendants have categorically denied, and continue to deny that they committed any violations of the FLSA and/or NYLL.

The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor.  *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

Courts have interpreted this limitation to mean that parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S.

Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8(1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 1532007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

Courts considering motions to approve FLSA settlements, i.e., Cheeks motion, must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Id*. (internal quotations omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), quoting, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

## I. Plaintiff's range of possible recovery

Defendant HK Kitchen Corp. ("Defendant") owns and operates a restaurant and bar which located at 3599 East Tremont Avenue, Bronx, New York 10465. Defendant employed Plaintiff Vera as a Sous Chef from in or around April 2019 to March 2020 and Plaintiff Castro Minaya from June 2019 to March 2020 as a kitchen worker.

Initially, Plaintiff Vera was assigned to work Wednesday through Friday, from 10:00 a.m. to 10:00 p.m., and Saturday and Sunday from 10:00 a.m. to 11:00 p.m. and paid a salary of $800 each workweek. Notably, Plaintiff Vera was directed to clock out at 6:00 p.m. or after working eight hours when he reported to work after 10:00 a.m. In or around September 2019, Defendant increased Plaintiff Vera's rate of pay to $900 per week without changing his scheduled hours of work and sometime thereafter Defendant started issuing Plaintiff Vera business checks that identified him as an independent contractor and did not comply with NYLL 195(3) by detailing the number of hours worked and the hourly and the overtime rate of pay.

In or around June 2019, Defendant hired Plaintiff Castro Minaya for a vacant kitchen worker position in Defendant's restaurant, to begin immediately. Plaintiff Castro Minaya

was assigned to work Thursday through Sunday from 1 p.m. to between 3:00 a.m. and 4:00 a.m.  Plaintiff was paid a salary of $600 each workweek.  Plaintiff Castro Minaya was told that since he was going to be paid in cash, he did not have to clock in and out when he reported to or left work. In or around January 2020, Defendant increased the number of days that Plaintiff Castro Minaya worked from Thursday through Sunday to Monday through Sunday and raised his pay to $996 per week.

In or around July 21, 2020, Plaintiffs, through their counsel, sent Defendants a written notice, pursuant to N.Y. Business Corporation Law §§ 624 and 630, seeking disclosure of the names and addresses of the ten largest shareholders to provide them with notice of Plaintiffs intent to hold them personally liable for unpaid wages.

In response to Plaintiffs' protected activities, Robert, Defendant HK Kitchen Corp.'s Manager, in or around August 17, 2020, called Plaintiff Vera and told him that he wanted Plaintiff Vera to work with Defendant in the new restaurant that Defendant was opening.  During this conversation Robert told Plaintiff Vera that to work with Defendant, Plaintiff Vera was required to sign a document stating that he was not owed any unpaid wages.  Plaintiff Vera stated that he was unwilling to sign the document and that he was unsure that wanted to work with Defendant.

On August 21, 2020, Robert went to Plaintiff's new place of employment in person with Luis Sanchez and tried to persuade Plaintiff Vera to sign a document wherein stating that he was not owed unpaid wages from Defendant.  Plaintiff Vera refused to sign the document and Robert became upset and yelled to Plaintiff that he had timecards that showed that Plaintiff Vera did not work more than 40 hours each week and they paid him $900 per week.

Robert then told Plaintiff Vera that he had been overpaid by Defendant and Luis Sanchez and that he owed Defendant $7,000 and $12,000 to Luis Sanchez.  Robert then told Plaintiff Vera that if he signed the document stating that Defendant did not owe Plaintiff Vera unpaid wages, then Defendant and Luis Sanchez would not assert their claims against Plaintiff Vera to recover the $19,000 that Robert asserted Plaintiff Vera owed Defendant and Luis Sanchez.

Plaintiff Vera was resolute in his refusal to sign the document that Robert was pressuring him to sign and they left.  Plaintiff Vera then spoke to his coworkers who still worked for Defendant and learned that Defendant required that they all sign documents stating that they were not owed unpaid wages in exchange for continued employment for Defendant.

Moreover, Plaintiff Vera learned that Robert told all of his Plaintiff Vera's coworkers that Plaintiff Vera had secretly recorded all of them discussing their involvement in a lawsuit against Defendant prior to, or at the time, presenting them with documents to sign stating that Defendant did not owe them unpaid wages.

Defendant's accusations that Plaintiff Vera secretly recorded his former coworkers angered them and made them hostile towards Plaintiff Vera whereas prior to these false accusations, they were friendly towards Plaintiff Vera.

Plaintiff's potential range of recovery hinged, in large part, on whether the Court were to grant Defendants' motion to dismiss Plaintiff's New York State wage claims on the grounds that Plaintiff was an exempt janitor.

Assuming that Plaintiff ultimately prevailed at trial on this issue, Plaintiff Vera maintains that his potential range of recovery would be $70,288.21, broken down as follows: (1) $16,500.00, in unpaid overtime pay; (2) $16,500.00, in liquidated damages; (3) $5,000.00, in damages pursuant to NYLL § 195(1); (3) $5,0000.00, in damages pursuant to NYLL 195(3); (5) $25,000.00, in damages for retaliation under the FLSA and NYLL; and (6) $2,288.21 in interest.

Assuming that Plaintiff Castro Minaya ultimately prevailed at trial on this issue, Plaintiff Catro-Minaya maintains that his potential range of recovery would be $61,440.53, broken down as follows: (1) $24,342.50, in unpaid overtime pay; (2) $24,342.50, in liquidated damages; (3) $5,000.00, in damages pursuant to NYLL § 195(1); (4) $5,0000.00, in damages pursuant to NYLL 195(3); and, (5) $2,755.53 in interest.

Additionally, if Plaintiffs were to prevail at trial, Plaintiffs would be entitled to attorneys' fees and pre-judgment interest under New York State law, and costs.

## II. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses

Counsel for the parties are experienced in litigating and resolving wage-and-hour matters. The parties engaged in extensive negotiations beginning in or around January 2020, and after much discussion regarding the strengths and weaknesses and risks of going forward, the parties made a reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with the Defendants' legal expenses in defending this matter through a dispositive motion or trial would likely exceed the settlement amount.

## III. The seriousness of the litigation risks faced by the parties

Parties to litigation face risk and expenses that are inherent in litigation, including appeals, and post-judgment collection proceedings.

Here, Defendants had documentary evidence showing, including: (1) signed statements from Plaintiff Vera agreeing that he was not owed any wages, from September 10, 2019, to November 10, 2019; (2) an agreement between Defendant and an independent contractor, holding Defendant harmless for unpaid wages, with respect to Plaintiff Vera; (3) signed contract between Defendant an independent contractor that Defendant alleges were Plaintiff Vera's employer; (4) time cards relating to Plaintiff Vera; and, (5) NYLL 195(1) notice signed by Plaintiff Vera.

Plaintiffs also face the risk of no recovery with respect to all of their claims, a lower recovery or a delayed recovery because Defendant has the resources to litigate this case through

appeals process.  On the other hand, the Defendants acknowledged the inherent uncertainty associated with all litigation, and the potential exposure in this case.

## IV. Whether the settlement agreement is the product of arm's-length bargaining between experienced counsel

The settlement agreement here is the product of arm's-length negotiation between experienced counsel, each of whom vigorously represented their respective clients' interests. Moreover, the parties participated in mediation on April 22, 2021, with Sara Kula, Esq., who assisted the parties' in identifying their positions' respective strengths and weaknesses, risk inherent in litigation, duration of time involved in litigation, *etc*.  With the Ms. Kula's assistance and after discussing the strengths and weaknesses and risks of going forward at mediation, the parties made the reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with Defendant's defense through a dispositive motion or trial would exceed the settlement amount.

## V. The possibility of fraud or collusion

Counsel who are experienced in litigation matters, including wage and hour litigation under the FLSA, represented the parties.  Counsel for both sides utilized their experience and thoroughly analyzed the claims and defenses, determined the range of potential damages for Plaintiff, and engaged in arms-length negotiations to achieve a fair resolution for the parties. The parties themselves heavily were involved in the settlement negotiations and had the opportunity to carefully review the terms of the settlement agreement before execution.

Thus, there was no possibility of fraud and collusion throughout the process.

The parties represent to the Court that the settlement agreement is fair to the Plaintiff, reasonably resolves bona fide disagreements between the Plaintiff and Defendants about the merits of the Plaintiff's claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

On this basis, the settlement reached was fair and reasonable.

The parties agreed to settle all of the claims, including statutory attorneys' fees, for $37,000.00.  The settlement is to be broken down as follows:

   a. Plaintiff Vera will receive $14,474.65 in back wages, under the FLSA and NYLL;
   b. Plaintiff Minaya will receive $9,807.97 in back wages, under the FLSA and NYLL;
   c. $12,141.30 as attorneys' fees and $576.08 in costs, totaling $12,717.38, payable to "The Law Offices of Fausto E. Zapata, Jr., P.C."

Under the terms of the agreement, the Defendants will make two payments, as follows: (1) $25,000.00 within thirty days of the dismissal of the instant matter; (2) $12,000.00 within

sixty days of dismissal of the instant matter; the first payment will largely be made out to the Plaintiffs.

## VI. Attorneys' Fees

Under the FLSA and NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees.

In the FLSA context, attorneys' fees arise in three contexts: (1) applications following a ruling in favor of the plaintiff; (2) following a settlement where the agreement reserves the question of fees and costs for the court to decide; (3) settlement incorporating attorneys' fees and costs into the settlement amount. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020), *citing, Cheeks*, 796 F.3d at 206.     "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' "" *Fisher,* 948 F.3d at 606.

The Second Circuit has held "[n]either the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a 'reasonable attorney's fee to be paid by the defendant'… Nothing in this clause or the surrounding text provides for the conclusion that a 'reasonable attorneys fee must be a 'proportional' fee." *Fisher*, 948 F.3d at 603 (finding that limiting attorneys' fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse.)

To assess reasonableness of fees and cost applications, courts require that fee applications be supported by adequate documentation. *Fisher*, 948 F.3d at 600, *citing, N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  This includes contemporaneous time records for attorney time that details the nature of the work performed. Id.

With regards to statutory attorneys' fees, courts in this District routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *See Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (E.D.N.Y. 2012) (in this case, Plaintiff's counsel was awarded approximately $500 an hour in an FLSA case); *Kahlil v. Original Old Homestead Rest.,* 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (awarding hourly rate of $400 for a "senior lawyer with 25 years experience"); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants"); *Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS 58179, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $400 to an attorney with 7 years experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs'

counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher*, 948 F.3d at 606.

### A. Experience and Hourly Rate

I am the founder of The Law Offices of Fausto E. Zapata, Jr., P.C., a small firm in Manhattan, founded in 2005, that has almost exclusively represented individual plaintiffs in a wide range of labor and employment issues from the inception of the firm. Moreover, I have 19 years of experience in the field of labor and employment law and, to that end, I have litigated a variety of labor and employment matters in both Federal and New York State courts.

In the past, I have successfully handled numerous wage and hour matters ranging from individual claims to collective actions involving over 400 plaintiffs. *See, Ramos v. The City of New York*, S.D.N.Y. 13 Civ. 9225 (KBF); *Ozpinar, et al. v. L & G Delite, LLC, et al.*, E.D.N.Y. 13 Civ. 7368 (SJ)(CLP) (court approved 40% contingency fee in settlement); *Stephens v. The City of New York, et al.*, S.D.N.Y. 13 Civ. 2364 (KBF); *Olga Quintana v. United Building Maintenance Associates, Inc.*, E.D.N.Y. 11 Civ. 5708 (KBF) (court approved 40% contingency fee in settlement); *Jehle v. The Christophers, et al.* S.D.N.Y. Index No. 14 CV 2284 (court approved 40% contingency fee in settlement); *Sanchez v. Metro Terminals Corp.*, et al., E.D.N.Y. 10 Civ. 1645 (court approved 40% contingency fee in settlement); *Carmen Maidana v. La Esquina Criolla Restaurant, Inc., et al.*, E.D.N.Y. Case No. 11 Civ. 2606 (CBM) (CLP)).

Here, my offices' standard hourly billing rate for my time is $500.00 an hour and I worked 36 hours and incurred $576.08 in out of pocket expenses in prosecuting Plaintiff's FLSA claims. See, Exhibit "B" for a copy of billing. Under the terms of our retainer agreement, Plaintiff agreed to pay the filing fees, expert witnesses, and other customary litigation costs from any amount recovered. Plaintiff would have no financial obligations to repay any of the costs/fees if Plaintiff did not recover damages in this action.

I have reviewed our office's billing records and confirmed that time/resources devoted to this matter were reasonably and necessarily performed to litigate this matter effectively. I have acted as the lead counsel responsible for the prosecution of this action and also maintained contemporaneous time records reflecting the time spent on this matter. See, Exhibit "C" for a copy of the aforementioned.

### B. Cross-Check

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the

claimed lodestar can be tested by the court's familiarity with the case." *Davis*, U.S. Dist. LEXIS 117082, 2011 WL 4793835, at \*10 (*citing Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \*20 (internal citations omitted). Courts commonly award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded).

Here, Plaintiff's counsel and Plaintiff agreed that Plaintiff's counsel would fund the litigation and would receive the greater of either: (1) a contingency of 33% of the gross recovery amount, including statutory attorney's fees, in this case $12,141.30, after first deducting costs and expenses from the gross recovery amount, in this case $576.08; or, (2) statutory attorneys' fees only. Additionally, the retainer agreement provided that if Plaintiff did not prevail, then Plaintiff would not have to pay our office any legal fees or our services in connection with prosecuting the instant matter.

The legal fees here would result in a multiplier in the range of 1.48. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at \*27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

At this time, Defendant takes no position with respect to Plaintiff's counsel's request for attorneys' fees. On this basis, the parties agree that this settlement is an equitable resolution to the instant matter.

Very truly yours,

Fausto E. Zapata, Jr.

C:    File

8

Exhibit A

SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT AND GENERAL RELEASE (the "Agreement") is hereby made and entered into by and between Abel Vera and Osvaldo Castro Minaya (collectively referred to as "Plaintiffs") on behalf of themselves, their agents, assigns, attorneys, heirs, successors, executors and administrators, and HK Kitchen Corp., a New York domestic business corporation ("Defendant") (Plaintiffs and the Defendant may be referred to collectively herein as the "Parties"), and is effective on the day after it has been executed by Plaintiffs (the "Effective Date").

WHEREAS, Plaintiffs, through their attorneys, have asserted claims for, inter alia, alleged unpaid overtime pay and other compensation against the Defendant pursuant to the Fair Labor Standards Act and related New York State Labor laws in an action filed in the United States District Court for the Southern District of New York (the "Court"), entitled, *Abel Vera et al. v. HK Kitchen Corp., SDNY Case No. 20 Civ. 8204* (the "Action"); and

WHEREAS, the Defendant vigorously deny all claims asserted by Plaintiffs and any allegations of wrongdoing whatsoever in connection with Plaintiffs' employment, the payment of wages and other compensation for such employment, and the Defendant's decisions and actions with respect to such employment; and

WHEREAS, the Parties to this Agreement mutually desire to fully resolve and forever settle any and all claims, charges, complaints, grievances, disputes or other potential actions of any kind whatsoever that Plaintiffs may have for the purpose of avoiding the time, expense and inconvenience of further litigation; and

WHEREAS, all Parties to this Agreement are and have been represented by legal counsel at all times throughout the negotiation, preparation and execution of this Agreement, and all Parties have had a full and fair opportunity to consider this Agreement and review all of its terms with the assistance of such counsel; and

WHEREAS, all Parties to this Agreement have carefully considered other alternatives to executing this Agreement and have entered into this Agreement knowingly, voluntarily and without coercion; and

WHEREAS, Plaintiffs acknowledge and agree that the payment of the Settlement Amount (as hereinafter defined) to Plaintiffs by the Defendant is provided as consideration for Plaintiffs' agreement to knowingly and voluntarily release, dismiss and waive Plaintiffs' claims and any actions, charges, complaints, grievances, disputes or other potential actions of any kind whatsoever against the Releasees (as hereinafter defined), including but not limited to claims for attorneys fees, costs and disbursements, and is conditioned upon acceptance by Plaintiffs of the terms of this Agreement; and

WHEREAS, the Defendant acknowledges and agrees that the general release and covenant not to sue contained herein from Plaintiffs are provided by Plaintiffs as consideration for payment of the Settlement Amount (as hereinafter defined); and

NOW THEREFORE, with the intent to be legally bound hereby and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all of the Parties hereto, IT IS HEREBY AGREED by and between the Parties as follows:

## AGREEMENT

1) No Admission of Liability.  The Defendant does not admit to any liability or wrongdoing whatsoever by themselves or by any individuals acting under their supervision or on their behalf.  Neither this Agreement nor the payment or acceptance of the Settlement Amount (as hereinafter defined) constitute, nor shall they be construed, described or characterized by any of the Parties hereto or by any of their agents or representatives as, an admission by Defendant or by any individuals acting under their supervision or on their behalf of any liability or wrongdoing or violation of any law, rule, regulation, public policy or contractual provision.

2) Discontinuance of Action.  Plaintiffs agree to dismiss the Action, with prejudice, by executing through counsel and authorizing the filing of a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii), in the exact form attached to this Agreement as Exhibit A (the "Stipulation").  The executed Stipulation shall be filed with the Court by counsel for the Defendant immediately following execution of this Agreement by all of the Parties.

3) Consideration.
   A) In consideration for signing this Settlement Agreement and Release (hereinafter referred to as "Agreement", and complying with the terms and conditions herein, Defendant agrees to pay Plaintiffs a total sum of Thirty-Seven Thousand Dollars and Zero Cents ($37,000.00) payable in two installments as follows:
      I) Within thirty (30) days after: (a) Defendant receives a signed copy of this Agreement; and, (b) the Lawsuit (as defined below) has been dismissed with prejudice after the Court approves it at a fairness hearing or other statutory approval process.  Subject to the conditions set forth herein, the Payment will be delivered to The Law Offices of Fausto E. Zapata, Jr., P.C., 277 Broadway, Suite 206, New York, NY 10007 in the form of three (3) checks as follows:

(a) The first check will be in the amount of Fourteen Thousand Four Hundred Seventy-Four Dollars and Sixty-Five Cents ($14,474.65), made payable to "Abel Vera", which shall represent payment of alleged damages for unpaid wages under the Fair Labor Standards Act and New York Labor Law, damages pursuant to New York Labor Law §§ 195(1) and 195(3), liquidated and non-wage income and interest. These funds will not be subject to withholdings, for which a Form 1099 will be issued.

(b) The second check will be in the amount of Nine Thousand Eight Hundred Seven Dollars and Ninety-Seven Cents ($9,807.97), made payable to "Osvaldo Castro Minaya", which shall represent payment of alleged damages for unpaid wages under the Fair Labor Standards Act and New York Labor Law, damages pursuant to New York Labor Law §§ 195(1) and 195(3), liquidated and non-wage income and interest. These funds will not be subject to withholdings, for which a Form 1099 will be issued.

(c) Third check will be in the amount of Seven Hundred Seventeen Dollars and Thirty Eight Cents ($717.38), made payable to "The Law Offices of Fausto E. Zapata, Jr., P.C.", Plaintiff's attorneys, as and for $141.30 in attorneys' fees and $576.08 in costs, for which a Form 1099 will be issued to Employee and The Law Offices of Fausto E. Zapata, Jr., P.C.

II) The second Payment shall be made within thirty (30 ) days from the date of the Initial Payment and will be delivered to The Law Offices of Fausto E. Zapata, Jr., P.C., 277 Broadway, Suite 206, New York, NY 10007 in the form of one check as follows:

(a) The third check will be in the amount of Twelve Thousand Dollars and Zero Cents ($12,000.00), made payable to "The Law Offices of Fausto E. Zapata, Jr., P.C.", Plaintiff's attorneys, as and for $12,000.00 in attorneys' fees, for which a Form 1099 will be issued to Employee and The Law Offices of Fausto E. Zapata, Jr., P.C.

B) Plaintiffs acknowledge that they are owed no other amounts from the Defendant, and understand that Plaintiffs and their counsel will not receive the payments constituting the Settlement Amount unless Plaintiffs execute this Agreement and do not revoke their acceptance of this Agreement within the Revocation Period (as hereinafter defined).

C) Defendant agrees to execute an Affidavit of Confession of Judgment attached to this Agreement as Exhibit A. The Affidavit of Confession of Judgment will be held in escrow by the Plaintiffs' counsel and will not be filed for any reason unless the following event occurs: the Defendant defaults on any part of any of the payments agreed to in paragraph 3(A) above and upon due notice of said default by Plaintiffs' counsel to Defendant's counsel by email and thereafter the failure of the Defendant to cure said default within seven (7) business days of said notice. In the event said Affidavit of Confession of Judgment is filed, the amount shall be for the remaining unpaid balance of the total settlement which remains unpaid and subject to the default notice. Upon full payment of the settlement herein, the Plaintiffs' counsel shall be

obligated to return the original Affidavit of Confession of Judgment to the Defendant's counsel within ten (10) days after payment of the entire sum hereunder. Plaintiffs' counsel shall be entitled to reasonable attorneys fees, if Defendant defaults and Plaintiffs' counsel is required to take legal action, including filing the Affidavit of Confession as described herein.

D) Full Satisfaction: It is mutually understood and agreed by all Parties to this Agreement that the Settlement Amount paid by the Defendant pursuant to this Agreement shall constitute full, final and complete satisfaction and settlement of any and all claims that have or may have been asserted by Plaintiffs whether under the New York Labor Law and related regulations, or for breach of contract, tort or under any other federal, state or local law, against the Defendant as of the date of this Agreement, and shall include all elements of recovery permitted under such laws whether for back pay, front pay, liquidated damages, compensatory damages, punitive damages, expenses, interest, attorneys fees, expert witness fees or costs, and Plaintiffs expressly waives any and all such claims against the Releasees (as hereinafter defined). The Parties agree and affirm that the Settlement Amount represents a fair and reasonable resolution of the claims raised by Plaintiffs in light of factual disputes and the totality of the circumstances.

E) The parties agree that the payments described in paragraph II(a)-(h) of this section are subject to 1099 reporting, and that Plaintiffs shall be solely and individually responsible for payment of any all taxes due. In the event that any federal, state, or local taxing authority or court determines that taxes, interest, penalties, or other liabilities are due and owing as a result of the payments made hereunder, said taxes, interest, penalties and other liabilities shall be the sole obligation and liability of the Plaintiffs, who hereby agree to hold harmless and indemnify Defendant from any tax related liabilities.

2) Waiver and General Release:
   A) Plaintiffs knowingly and voluntarily release and forever discharges HK Kitchen Corp., its current and former owners, shareholders, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all wage claims, known and unknown, asserted or unasserted, which the Plaintiffs have or may have against Releasees as of the date of execution of this Agreement and Release, including, but not limited to, claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), or any other wage or compensation related law or requirement and any implementing wage orders, rules or regulations, including any claims for attorneys' fees.
   B) Notwithstanding the aforementioned, Plaintiffs reserve the right to pursue HK Kitchen Corp.'s individual shareholders pursuant to New York Business

Corporation Law, including but not limited to NY Business Law §§ 630 et seq. upon and for any default by the Corporation in carrying out this Agreement.

C) Excluded from the general release set forth in Subparagraph (a) above are any claims or rights, which cannot be waived by law.  Also excluded from such general release is Plaintiffs' right to file a charge with an administrative agency, including the National Labor Relations Board or the Equal Employment Opportunity Commission, or participate in any agency investigation.  Plaintiffs do, however, waive their right to recover any money in connection with such a charge or investigation.  Plaintiffs also waive their right to recover any money in connection with a charge filed by any other individual or any other federal, state or local agency.

D) To the fullest extent permitted by law, Plaintiffs PROMISE NOT TO SUE or bring any charges, complaints or lawsuits related to the claims hereby waived against the Releasees in the future, individually or as a member of a class. Nothing in this Agreement shall limit or restrict Plaintiffs' rights to challenge the validity of this Agreement in a court of law.

E) Plaintiffs acknowledge that they may discover facts in addition to or different from those which Plaintiffs now know or believe to be true with respect to the subject matter of this Agreement.  However, it is Plaintiffs' intention to, and Plaintiffs do fully, finally and forever settle and release any and all claims against the Releasees, as set forth in Paragraph 4(a) above,  without regard to the subsequent discovery or existence of such different additional facts.

F) Plaintiffs knowingly, intentionally and voluntarily release and discharge Releasees not only from any and all claims which Plaintiffs could make on their own behalf, but Plaintiffs also specifically waive any right to become, and promise not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred prior to Plaintiffs' execution of this Agreement. It is understood that if Plaintiffs, by no action of their own, becomes a mandatory member of any class from which Plaintiffs cannot opt out by operation of law or court order, such mandatory class membership will not constitute a breach of this Agreement; however in such event Plaintiffs waives their right to any recovery as a result of such action. Furthermore, in such event or in the event that Plaintiffs unintentionally remains a member of a class from which Plaintiffs could have opted out, and Plaintiffs unintentionally receives a recovery as a result of being a class member, Plaintiffs will return the amount of that recovery to the applicable Releasees within thirty (30) days of receipt.

G) Notwithstanding anything in the foregoing paragraphs or otherwise in this Agreement to the contrary, no penalty, condition precedent or other limitation shall be imposed if Plaintiffs challenge the release of their rights or

covenant not to sue on the grounds that the waiver or covenant not to sue was not made knowingly and voluntarily. Plaintiffs do, however, waive their right to monetary or other recovery should Plaintiffs assert such claim arising out of or relating to Plaintiffs' employment with any of the Releasees, up until the date of Plaintiffs' execution of this Agreement. Plaintiffs additionally waive their right to monetary or other recovery should a state or local administrative agency pursue any claims on Plaintiffs' behalf.

H) This WAIVER, RELEASE and PROMISE NOT TO SUE are binding on Plaintiffs, their heirs, legal representatives and assigns.

3) No Other Claims. Plaintiffs represent that, other than the Action, Plaintiffs have not filed any complaints or charges against the Defendant or any of the Releasees with any local, state or federal agency or court. Further, to the fullest extent permitted by law, Plaintiffs shall not do so at any time hereafter for any claim arising out of their employment by any of the Releasees with respect to actions or conduct which occurred prior to Plaintiffs' execution of this Agreement.

4) Notice.  All notices, requests, consents, and other communications hereunder shall be in writing, via mail and/or email, addressed to the receiving Party's address set forth below or to such other address as any Party may designate by notice hereunder:

A) To Plaintiffs: by mail or email to:

> The Law Offices of Fausto E. Zapata, Jr., P.C.
> 277 Broadway, Suite 206
> New York, New York 10007
> Email: fz@fzapatalaw.com
> Fax: 212-766-9870

B) To the Defendant: by mail or email to:

> Benjamin Sharav, Esq.
> Law Office of Victor J. Molina
> 930 Grand Concourse
> Bronx, New York 10451
> Email: v.j.molina@verizon.net
> *juris_ben@msn.com*
> Tel: 718-401-1600

5) All notices, requests, consents and other communications hereunder shall be deemed to have been received either (i) if by hand, at the time of the delivery thereof to the receiving party at the address of such party set forth above, (ii) if made by email, (iii) if sent by overnight courier, on the next business day following the day such notice is delivered to the courier service, or (iv) if sent by

registered or certified mail, on the 5th business day following the day such mailing is made. No other methods of delivery are valid other than those expressly set forth above.

6) No Implied Waiver. The failure of the Parties to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive them of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

7) Failure or Delay. No failure on the part of any Party to exercise, or delay in exercising, any right, power or privilege hereunder operates as a waiver thereof; nor does any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. No notice to or demand on any Party in any circumstance entitles such Party to any other or further notice or demand in similar or other circumstances. All rights and remedies by this Agreement reserved to any party shall be cumulative and shall not be in limitation of any other right or remedy which such party may have at law, in equity or otherwise.

8) Entire Agreement. This Agreement, when signed by all Parties, shall constitute the entire understanding and agreement between the Parties and supersedes and cancels any and all prior oral and written agreements, if any, between and among them.

9) Modification in Writing. This Agreement and corresponding Exhibit(s) may not be altered, amended or modified, nor any of its provisions waived, except by a further agreement in writing signed by all of the Parties or their counsel.

10) No Other Assurances. Plaintiffs acknowledge that in deciding to execute this Agreement, Plaintiffs have not relied upon any promises, statements, representations or commitments, whether spoken or in writing, made to Plaintiffs by anyone, except for what is expressly stated in this Agreement. Plaintiffs specifically acknowledge that the Defendant and Defendant's attorneys do not make and have not made any representations regarding the taxability or tax status of any payments made pursuant to this Agreement, and state that Plaintiffs have not relied on any advice from the Defendant or Defendant's attorneys on that subject.

11) Governing Law. This Agreement and the rights and obligations of the Parties hereunder are to be governed by and construed and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within New York, without regard to choice or conflict of laws principles.

12) Joint Preparation. The language of all parts of this Agreement shall in all cases be construed as a whole, extending to it its fair meaning, and not strictly for or

against any of the Parties.  The Parties agree that, in consultation with their attorneys, they have jointly prepared and approved the language of the provisions of this Agreement, and that should any dispute arise concerning the interpretation of any provision hereof, neither Plaintiffs nor the Defendant shall be deemed the drafters, nor shall any such language be presumptively construed in favor of or against either Plaintiffs or the Defendant.

13) Severability.  If any provision, term or clause of this Agreement is declared by any court of competent jurisdiction or any foreign, federal, state, county or local government or any other governmental regulatory or administrative agency or authority or arbitration panel to be invalid, void, unenforceable or against public policy for any reason, that provision, term or clause shall be deemed severable, such that all other provisions, terms and clauses of this Agreement shall remain in full force and effect and shall continue to be valid and binding upon all of the Parties.  Upon any finding that a release or waiver of claims or rights or a covenant set forth herein is illegal, void or unenforceable, Plaintiffs agree to execute promptly new releases, waivers and/or covenants that are legal and enforceable.

14) Captions. Paragraph captions contained in this Agreement have been inserted herein only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

15) Counterparts.  This Agreement may be executed with original signatures in counterparts, or by facsimile or PDF-scanned signatures in counterparts, which shall be deemed legally binding as fully as an original signature.

IN WITNESS WHEREOF, this Agreement has been executed and delivered by all of the Parties hereto on the dates written below.

**SIGNATURE OF PLAINTIFFS**

BY SIGNING THIS SETTLEMENT AND GENERAL RELEASE AGREEMENT, I STATE THAT:

(a) I HAVE READ IT, OR, IF UNABLE TO READ ENGLISH, I HAVE HAD IT TRANSLATED IN FULL TO ME IN A LANGUAGE THAT I UNDERSTAND.

(b) I UNDERSTAND IT AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS AS MORE PARTICULARLY DESCRIBED IN THE AGREEMENT.

(c) I ACKNOWLEDGE AND CONSENT TO EVERYTHING IN THE AGREEMENT.

(d) I HAVE BEEN ADVISED OF MY RIGHT TO CONSULT WITH AN ATTORNEY OF MY OWN CHOOSING BEFORE EXECUTING IT AND I HAVE SO CONSULTED WITH MY ATTORNEY.

(e) I HAVE BEEN GIVEN WHAT I CONSIDER TO BE A SUFFICIENT PERIOD OF TIME TO CONSIDER THIS AGREEMENT BEFORE SIGNING IT.

(f) I HAVE SIGNED THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

(g) I ACKNOWLEDGE THAT THE PROVISIONS OF THIS AGREEMENT MAY NOT BE AMENDED, WAIVED, CHANGED, OR MODIFIED EXCEPT BY AN INSTRUMENT IN WRITING SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE DEFENDANT.

**Signature of Plaintiffs**

Abel Vera

Name:            _____

Signature:       _____

Date:            _____


Osvaldo Castro Minaya

Name:            _____

Title:           _____

Signature:       _____

Date:            _____

**Signature of Defendant**

HK Kitchen Corp.

Name:            _____

Title:           _____

Signature:       _____

Date:            _____

<u>EXHIBIT A</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-------------------------------------------------------------------X**
**ABEL VERA and OSVLADO CASTRO MINAYA,**
**individually and on behalf of others similarly situated,**

|                          |                        |
|--------------------------|------------------------|
| **Plaintiffs,**          | **Case No. 20 Civ. 8204** |
| **-against-**            | **(PAE) (KHP)**        |

**HK KITCHEN CORP.,**

**Defendant.**
**-------------------------------------------------------------------X**

WHEREAS, on October 2, 2020, Plaintiffs filed a complaint, which asserted claims for, *inter alia*, alleged unpaid wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law and related regulations;

WHEREAS, the parties settled this action based upon arms-length negotiations, the terms of which are incorporated herein by reference, and which have been judicially approved as fair and reasonable; and

WHEREAS, the United States District Court for the Southern District of New York shall retain jurisdiction over all proceedings solely to enforce the terms of the settlement between the parties in this action;

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for the Plaintiffs and Defendant that this action is hereby dismissed and discontinued in its entirety with prejudice pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.  For a period of seven (7) months following entry of this stipulation and order, the Plaintiffs shall have the right to request that this action be

reopened solely in the event of nonpayment of the settlement amount by Defendant HK

Kitchen Corp.

Dated: New York, New York
      June __, 2021

_____    _____
Fausto E. Zapata, Jr., Esq.    Benjamin Sharav, Esq.
The Law Offices of Fausto.    Law Office of Victor J. Molina
E. Zapata, Jr., P.C.    *Attorneys for Defendant*
*Attorneys for Plaintiffs*    930 Grand Concourse
277 Broadway, Suite 206    Bronx, New York 10451
New York, NY  10007    Tel: 718-401-1600
Tel: 212-766-9870

      SO ORDERED:

      _____
      Hon. Katherine H. Parker
      U.S. Magistrate Judge

Exhibit B

 **Gmail**

**Fausto Zapata <fz@fzapatalaw.com>**

## Activity in Case 1:20-cv-08204 Vera et al v. HK Kitchen Corp. Complaint
1 message

**NYSD_ECF_Pool@nysd.uscourts.gov** <NYSD_ECF_Pool@nysd.uscourts.gov>          Fri, Oct 2, 2020 at 12:07 PM
To: CourtMail@nysd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail
because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of
record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed
electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To
avoid later charges, download a copy of each document during this first viewing. However, if the referenced
document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of New York**

### Notice of Electronic Filing

The following transaction was entered by Zapata, Fausto on 10/2/2020 at 12:07 PM EDT and filed on 10/2/2020
**Case Name:**          Vera et al v. HK Kitchen Corp.
**Case Number:**       1:20-cv-08204
**Filer:**                   Abel Vera
                          Osvaldo Castro Minaya
**Document Number:** 1

**Docket Text:**
**COMPLAINT against HK Kitchen Corp.. (Filing Fee $ 400.00, Receipt Number ANYSDC-
21955430)Document filed by Abel Vera, Osvaldo Castro Minaya..(Zapata, Fausto)**

**1:20-cv-08204 Notice has been electronically mailed to:**

Fausto Ernesto Zapata , Jr &nbsp &nbsp fz@fzapatalaw.com, faustozapatajr@gmail.com

**1:20-cv-08204 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=10/2/2020] [FileNumber=24698537-
0] [06663188ac67dc2699de7105fe357b77a812d3c12f6d393152ff51eabcdcda9894
818d1b4c9ffb25d33782ce851ed2470cd010618b98c219c413753b87e7b8cb]]

# PM Legal

PM Legal, LLC

75 Maiden Lane, 11th Floor
New York, NY 10038
(212) 233-4040
(212) 732-4327 (fax)
info@pmlegal.com

ATTN: FAUSTOERNESTO ZAPATA                     Route: AW1
FAUSTO E. ZAPATA JR. PC
277 BROADWAY SUITE 206
NEW YORK,NY 10007

For your convenience, below is a summary of this file's charges that are included on Invoice 10286129

File # :                              Your contact:  Fausto Zapata
Index #:   20-cv-08204
US DISTRICT COURT
ABEL VERA AND OSVALDO CASTRO MINAYA, INDVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. HK KITCHEN

| Job # | | Servee | Line item detail | Fee Prepaid | Fee | Charge | Job Total |
|---|---|---|---|---|---|---|---|
| 3810744 | 10/12/20 | HK KITCHEN CORP. | | | | | $64.00 |
| | | | *SUMMONS IN A CIVIL ACTION CLASS AND COLLECTIVE ACTION COMPLAINT, INDIVIDUAL RULES AND* | | | | |
| | | | *PRACTICES IN CIVIL CASES AND ELECTRONIC CASE FILING RULES & INSTRUCTIONS* | | | | |
| | | | CHARGE - Service in Bronx | | | 64.00 | |
| 3810769 | 10/13/20 | HK KITCHEN CORP. | | | | | $93.00 |
| | | | *SUMMONS IN A CIVIL ACTION CLASS AND COLLECTIVE ACTION COMPLAINT, INDIVIDUAL RULES AND* | | | | |
| | | | *PRACTICES IN CIVIL CASES AND ELECTRONIC CASE FILING RULES & INSTRUCTIONS* | | | | |
| | | | CHARGE - Serve Sec. of State; | | | 53.00 | |
| | | | SOS FEE ADVANCE - Sec. of State Fee Advar | | 40.00 | | |
| | | | | | | | **$157.00** |



## Shipment Receipt

**Address Information**

Ship to:
Manager
HK Kitchen Corp.
3599 East Tremont Avenue

BRONX,  NY
10465
US
347 851 2000

Ship from:
Fausto Zapata

277 Broadway, Suite 206

New York,  NY
10007
US
2127669870

**Shipment Information:**
Tracking no.: 771054511507
Ship date: 07/21/2020
Estimated shipping charges:  19.08 USD

**Package Information**
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.50  LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: Fausto-368
Your reference:
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

Exhibit B

| Date | Hours | Description |
|------|-------|-------------|
| 6/12/20 | 0.3 | Reviewed notes and discussed case with Osvaldo. |
| 7/29/20 | 0.5 | Answered Clients' questions |
| 8/13/20 | 5 | Drafted and edited summons and complaint. |
| 8/19/20 | 0.1 | Returned Vera's call and answered his questions about procedure. |
| 8/20/20 | 3.8 | Reviewed notes and edited Complaint. Discussed claims with Osvaldo and Vera. |
| 8/26/20 | 0.8 | Discussed retaliation claims Plaintiffs. |
| 10/4/20 | 0.4 | Prepared papers for service. |
| 11/2/20 | 1 | Reviewed Court's rules, order for scheduling conference, and drafted and sent a letter asking Defendant's attorneys to contact our office for the 26(f) conference. |
| 11/2/20 | 0.2 | Filed affidavits of service. |
| 1/4/21 | 3.8 | Reviewed file and worked on FRCP 26 disclosures and calculated damages.  Started working on discovery demands. |
| 1/4/21 | 0.4 | Discussed damages and witnesses with Minaya in connection with FRCP 26A disclosures |
| 1/4/21 | 0.5 | Prepared FRCP 26(f) disclosures |
| 2/10/21 | 0.5 | Discussed scheduling mediation with Victor Molina, discussed case with Vera and Osvaldo. |
| 2/16/21 | 0.6 | Discussed case with Client |
| 3/9/21 | 7.5 | Drafted and edited mediation statement. |
| 2/3/21 | 7.5 | Drafted and edited first set of discovery demands. |
| 5/24/21 | 3 | Drafted and edited Cheeks Motion. |
| 6/16/21 | 0.4 | Finalized Cheeks letter motion.  Prepared consent to proceed with Magistrate.  Discussed case with Benjamin Sharav. |
| **TOTAL** | **36.3** | |